UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA        :
     :
     : S4 06 Cr. 1098 (BSJ)
         -v-      :
     :
     :
DOMINICK DEVITO, et al.,      :
     :
     :
           Defendants.      :
     :
     :

- - - - - - - - - - - - - - - - - -x


GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' SEVERANCE MOTIONS


                               MICHAEL J. GARCIA
                               United States Attorney for the
                               Southern District of New York
                               *Attorney for the United States
                               of America*


KATHERINE R. GOLDSTEIN
JONATHAN B. NEW
Assistant United States Attorneys
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :
                                            :
                                            :  S4 06 Cr. 1098 (BSJ)
          -v-                               :
                                            :
                                            :
DOMINICK DEVITO, et al.,                    :
                                            :
                                            :
                    Defendants.             :
                                            :
                                            :

- - - - - - - - - - - - - - - - - - -x


## THE GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE DEFENDANTS' SEVERANCE MOTIONS


        The Government respectfully submits this memorandum of
law in opposition to the severance motions of defendants Dominick
DeVito, Louis Cordasco, Jr., and John Liscio.  First, DeVito,
Cordasco and Liscio seek severance of Counts Fourteen and
Fifteen, which relate to an alleged conspiracy to commit
insurance fraud, from the other counts in the Indictment, on the
basis that those counts are misjoined and that a joint trial on
all counts would be prejudicial to the defendants.  Second,
DeVito seeks severance from all other defendants on all counts,
based on an alleged potential violation of his Confrontation
Clause rights should the Government offer certain recorded
statements by his co-defendants at trial.  Third, DeVito seeks

severance of Count 13, which charges him with obstruction of justice in a prior court proceeding, from the other counts in the Indictment.  For the reasons set forth below, the Government respectfully submits that the defendants' motions should be denied.  However, the Government consents to a bifurcation of the trial with respect to Count 13.

## Background

Indictment S4 06 Cr. 1089 (BSJ) (the "Indictment"), returned by a grand jury on or about April 29, 2008, charges defendants Dominick DeVito and Robert DiDonato with participating in a wide-ranging mortgage fraud scheme, and it charges defendants DeVito, DiDonato, John Liscio and Louis Cordasco, Jr. with participating in a related insurance fraud scheme.  The Indictment also charges DeVito with one count of obstruction of justice.

First, in Counts 1 through 12, the Indictment charges DeVito and DiDonato with participating in a conspiracy to commit bank fraud from in or about January 2002 through November 2004. DeVito was the leader of the fraudulent real estate investment scheme (Ind't ¶ 1); DiDonato acted as a real estate broker for DeVito in the purchase of properties that were the subject of the scheme (Ind't ¶ 2).  The purpose of the bank fraud conspiracy was Ato purchase and re-finance several multi-million dollar residential properties with mortgage and home equity loans obtained through the submission of false and misleading

3

information to banks and other lenders."  (Ind't ¶ 3).

As a result of the scheme, the defendants obtained control over certain properties they otherwise would not have been able to purchase, and they earned millions of dollars from loan proceeds, fees and commissions.  (Ind't ¶ 12). Specifically, DeVito, DiDonato, and their co-conspirators fraudulently obtained control over the following properties:  28 Brae Burn Drive, Purchase, New York ("28 Brae Burn"), 29 Pinehurst Drive, Purchase, New York ("29 Pinehurst"), 116 Lakeshore Drive, Eastchester, New York ("116 Lakeshore Drive"), 9 Oak Valley Lane, Purchase, New York, ("9 Oak Valley"), 4350 Purchase Street, Purchase, New York ("4350 Purchase"), 3801 Purchase Street, Purchase, New York ("3801 Purchase"), 4 Ridgeland Manor, Rye, New York ("4 Ridgeland") and 28 Scott Circle, Purchase, New York ("28 Scott Circle").  (Ind't ¶ 3).  In order to perpetrate this scheme, DeVito, among other things, utilized two business entities that he controlled -- the Purchase Real Estate Group ("PREG") and Encantada Realty Group.  Proceeds related to loans taken out against certain of these properties were deposited into a PREG bank account that was controlled by DeVito.

Counts Fourteen and Fifteen charge all four defendants with participating in an insurance fraud scheme from approximately January 2003 through February 2005.  The defendants are alleged to have schemed to defraud insurance companies by

4

submitting false insurance claims and supporting documents for water damage to homes and/or their contents caused by broken pipes.  (Ind't ¶ 31).

DeVito orchestrated the insurance fraud scheme, as well as organizing and leading the mortgage fraud conspiracy.  At DeVito's direction, Liscio, who is an insurance broker, sold various insurance policies to the homeowners of 28 Brae Burn, 4350 Purchase, 28 Scott Circle, and 3801 Purchase, and other properties that DeVito, DiDonato, and their co-conspirators purchased as part of the mortgage fraud scheme described above. Liscio also sold an insurance policy to DeVito for DeVito'S personal property while DeVito lived at 28 Brae Burn.  (Ind't ¶ 31).  After DeVito and his co-conspirators obtained control over 28 Brae Burn, 28 Scott Circle and 3801 Purchase Street, pipes broke in each of the homes, causing floods.  Liscio then hired Cordasco to perform emergency clean-up work at 28 Brae Burn and 28 Scott Circle. (Ind't ¶ 35).  In addition, Cordasco and Liscio planned to break a pipe at 4350 Purchase for the purpose of submitting false and misleading claims to an insurance company. (Ind't ¶ 34).

All of the defendants participated in the submission of false insurance claims for water damage from a broken pipe at 28 Brae Burn.  (Ind't ¶ 33).  DeVito was living in the house at the time of the pipe break.  After the house was flooded, DeVito submitted fraudulently inflated claims for damage to his personal

possessions, including his art work, rugs and interior decorating services; and DeVito and DiDonato submitted a fraudulently inflated claim for reimbursement for DeVito's "alternative living expenses" during the time when the house was being repaired. DeVito also submitted a fraudulently inflated claim for repairs to the property, which the insurance company was falsely told would be done by an independent contractor – Encantada Realty Group.  As a result of these false and misleading representations, DeVito received hundreds of thousands of dollars from the insurance company in connection with the flood at 28 Brae Burn.  All of the fraudulently obtained insurance proceeds were deposited in the PREG bank account for DeVito's benefit. (Ind't ¶ 36).  Cordasco received approximately $98,000 for emergency repair and restoration services.  Liscio also expected DeVito to pay him for his participation in the conspiracy.

Finally, Count 13 of the Indictment charges DeVito alone with obstructing justice in connection with his sentencing in a prior federal case, United States v. Pasquale Parello, et al., 01 Cr. 1120 (RLC) (the "Parello Indictment").  In that case, DeVito was charged with racketeering and racketeering conspiracy, as well with substantive counts of bank fraud relating to two pieces of residential real estate.  The bank fraud counts charged DeVito with committing mortgage fraud on banks that made him loans for the purchase of 3801 Purchase Street, a property which is also a subject of the scheme to defraud alleged in this

6

Indictment, and for 3747 Purchase Street, Purchase, New York ("3747 Purchase Street"). The Parello Indictment also contained forfeiture allegations, and the Government consequently placed liens on 3801 Purchase Street and 3747 Purchase Street.

DeVito ultimately pled guilty to two counts in the Parrello Indictment, including one count charging him with conspiracy to participate in the affairs of a racketeering enterprise (Count One) and one count of bank fraud relating to loans obtained against 3801 Purchase Street (Count 78). Prior to his sentencing, DeVito sold both 3801 Purchase Street and 3747 Purchase Street, with the Government's consent, on the condition that he not earn any profit from the sale of those properties.

Subsequently, in preparation for his sentencing, DeVito submitted an affidavit describing his net worth to the United States Probation Office. In that affidavit, DeVito declared that he earned no income from the sale of 3747 Purchase Street. Count 13 of the present Indictment alleges that DeVito's statement was false. (Ind't ¶ 27). In fact, nearly $700,000 in profit from the sale of 3747 Purchase Street was deposited into the PREG account, which was controlled by DeVito.

## ARGUMENT

I.      **The Court Should Deny The Defendants' Motions To Sever the Insurance Fraud Counts**

Defendants DeVito, Cordasco and Liscio move for severance of Counts Fourteen and Fifteen, based on Rules 8 and

7

14(a) of the Federal Rules of Criminal Procedure.[1]  Specifically,
the defendants argue that those counts, which relate to the
alleged conspiracy to commit insurance fraud, are improperly
joined with the other counts in the Indictment because they are
"separate and distinct sets of conspiracy and related substantive
crimes."  (Cordasco Mem. at 5).  Cordasco and Liscio also argue
that they should be severed from DeVito and DiDonato because of
the risk of "spillover prejudice."  (Id. at 17-23).  The
defendants' severance motions should be rejected.  Counts
Fourteen and Fifteen are properly joined with the other counts in
the Indictment and there is no basis for severance.

### A.  Applicable Law

        Rule 8(b) of the Federal Rules of Criminal Procedure
sets forth the standard that governs when joinder both of
offenses and defendants is permitted.  United States v. Turoff,
853 F.2d 1037, 1043 (2d Cir. 1988).  The Second Circuit has
interpreted Rule 8(b) to allow joinder of offenses and defendants
where two or more persons' criminal acts are "'unified by some

---

[1]     In the alternative, Cordasco requests a severance of himself
and Liscio, on the one hand, from DeVito and DiDonato, on the
other.  Accordingly, such a severance would result in two trials
- (1) a trial of DeVito and DiDonato on all counts, including
Counts Fourteen and Fifteen; and (2) a trial of Liscio and
Cordasco on only Counts Fourteen and Fifteen.  Cordasco does not
argue that the defendants are improperly joined.  Thus, Cordasco
seeks a discretionary severance pursuant to Rule 14.  For the
reasons set forth above, Cordasco's alternative motion should be
denied.  Cordasco and Liscio have failed to identify any
prejudice that they would face at a joint trial, and the proposed
severance would result in the needless repetition of testimony
and argument.

substantial identity of facts or participants' or 'arise out of a
common plan or scheme.'" United States v. Feyrer, 333 F.3d 110,
114 (2d Cir. 2003) (quoting United States v. Attanasio, 870 F.2d
809, 815 (2d Cir. 1989)). See, e.g., United States v. Cervone,
907 F.2d 332 (2d Cir. 1990) (proper joinder of eighteen
defendants in a 102-count indictment with a variety of labor
racketeering charges, as well as related charges of obstruction
of justice, bribery, and making false statements); United States
v. Weisman, 624 F.2d 1118 (2d Cir. 1980) (proper joinder of
charges and defendants where ten defendants charged with a
variety of offenses relating to creation, operation, and
bankruptcy of a theater).

Even with proper joinder under Rule 8, Federal Rule of
Criminal Procedure 14(a) allows the Court to grant a severance of
defendants' joint trial "[i]f it appears that a defendant or the
government is prejudiced by a joinder." Fed. R. Crim. P. 14(a).
However, a defendant seeking a severance under Rule 14 bears a
heavy burden. Relief under Rule 14 is available only when a
defendant can demonstrate that he will be "so severely
prejudiced" by a joint trial that he will "in effect [be] denied
a fair trial" if he is tried jointly with his co-defendants.
United States v. Minicone, 960 F.2d 1099, 1110 (2d Cir.), cert.
denied, 503 U.S. 950 (1992); see also United States v. Cervone,
907 F.2d 332, 341 (2d Cir. 1990) (to require severance, prejudice
of joint trial must be so substantial as to amount to a

9

miscarriage of justice), <u>cert.</u> <u>denied</u>, 498 U.S. 1028 (1991). The prejudice must be so "substantial" that there exists "a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." <u>United States</u> v. <u>Rosa</u>, 11 F.3d 315, 341 (2d Cir. 1993). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." <u>Zafiro</u> v. <u>United States</u>, 506 U.S. 534, 540 (1993); <u>see also</u> <u>United States</u> v. <u>Panza</u>, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

Even when a risk of substantial prejudice from being tried with co-defendants arises, severance is <u>not</u> automatic. "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." <u>Zafiro</u>, 506 U.S. at 539. The Supreme Court has further explained that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." <u>Id.</u> (citing <u>Richardson</u> v. <u>Marsh</u>, 481 U.S. 200, 211 (1987)).

Thus, severance is not required merely because evidence of the criminal activities of a defendant's co-defendant will be admitted at a joint trial. <u>See</u> <u>United States</u> v. <u>Cardascia</u>, 951 F.2d 474, 482-83 (2d Cir. 1991) (no due process violation where

defendants were forced to sit through a month of unrelated
evidence of a separate conspiracy involving co-defendants);
United States v. Casamento, 887 F.2d at 1153, 1167-68 (1989)
(minor defendants, against whom the direct evidence consisted of
only a few tape recorded telephone calls, properly tried as part
of multi-defendant trial which lasted seventeen months); United
States v. Barton, 647 F.2d 224, 241 (2d Cir. 1981) (defendant
charged only with obstruction of justice was properly denied a
severance from co-defendants charged with bombings, attempted
bombings, and racketeering).

　　　　As the Second Circuit has recognized, "differing levels
of culpability and proof are inevitable in any multi-defendant
trial and, standing alone, are insufficient" to require
severance.  United States v. Carson, 702 F.2d 351, 366-67 (2d
Cir. 1983) (citations omitted).  Similarly, "the fact that
evidence may be admissible against one defendant but not against
another defendant does not necessarily require a severance."
United States v. Losada, 674 F.2d 167, 171 (2d Cir. 1982).  Where
the evidence against the defendant is relatively simple and the
Court properly instructs the jury to afford each defendant
separate consideration, severance is not required.  See id.

　　　　**B.    Discussion**

　　　　The insurance-fraud related counts are properly joined
to the other counts in the Indictment.  The defendants'
activities in connection with the fraudulent real estate

11

investment scheme, charged in Counts 1 through 12, and the insurance fraud scheme, charged in Counts 14 and 15, arose out of a common scheme and plan to extract as much money as possible out of a group of multi-million dollar residential properties located in Westchester, New York.  The plan was organized and led by DeVito.  While his co-defendants and other co-conspirators also expected to profit from the scheme, the vast majority of the illegal proceeds were funneled to DeVito for his personal benefit.  As an initial step, DeVito, DiDonato and others, including Daniel Forbes, John Debello, and Joseph Lamanna, fraudulently obtained mortgages and home loans so that they could purchase and gain control over properties that they otherwise would not have been able to purchase and finance.  (Ind't ¶ 12). The defendants then used those houses in a number of different ways to fraudulently obtain millions of dollars: they fraudulently refinanced the mortgages on the properties (Ind't ¶ 22); they orchestrated "flips" of certain properties to obtain additional fraudulently inflated loans, (Ind't ¶ 7); they "cashed out" on certain properties by taking additional private loans against the already fraudulently-inflated sale price of the properties, (Ind't ¶ 11); they submitted and planned to submit fraudulently inflated insurance claims for water damage caused by pipe breaks (Ind't ¶¶ 31, 34); and they submitted a fraudulently inflated insurance claim for reimbursement for DeVito's "alternative living expenses" after one property was damaged by a

12

flood.  (Ind't ¶¶ 39 (b), (f)).

Thus, Cordasco's assertion that "there are no allegations that the purpose of purchasing these homes was to enable the participants to bilk insurance companies," misses the mark.  (Cordasco Mem. at 8).  Bilking insurance companies and committing mortgage fraud were two interrelated means used by the defendants to illegally profit from their control over these homes.

The temporal and factual interconnection between the defendants' fraudulent real estate investments and their insurance fraud can clearly be seen in the allegations concerning 28 Brae Burn.  The Indictment alleges that in July 2002, DeVito attended a closing for a fraudulently-obtained mortgage on 28 Brae Burn (Ind't ¶ 15(c)).  In August 2002, DeVito moved into 28 Brae Burn as his primary residence (Ind't ¶ 15(d)).  Subsequently, on September 29, 2002, DeVito received proceeds from another fraudulently-obtained loan on 28 Brae Burn.  (Ind't ¶ 15(f)).  Meanwhile, at DeVito's direction, Liscio sold an insurance policy to the nominal owner of 28 Brae Burn and an insurance policy to DeVito for his personal belongings while he lived at 28 Brae Burn.  (Ind't ¶ 32).  In January 2003, Liscio reported to an insurance company that 28 Brae Burn had suffered water damage, and began the process of filing a claim on behalf of DeVito and the nominal owner of the property.  (Ind't ¶ 39(a)).  Cordasco performed emergency clean up work on 28 Brae

Burn after the flood, and he submitted a fraudulently inflated appraisal for certain of DeVito's personal possessions as part of DeVito's insurance claim.  (Ind't ¶¶ 35, 39 (c)).  Proceeds from both the fraudulently obtained mortgages and the fraudulently inflated insurance claims on 28 Brae Burn were deposited into bank accounts for DeVito's benefit.  Thus, the mortgage and insurance fraud that the defendants committed using 28 Brae Burn were part of a single, continuous scheme to illegally profit from their control over the house.

Similarly, the insurance fraud and other counts in the Indictment are "'unified by some substantial identity of facts or participants.'"  <u>Feyrer</u>, 333 F.3d at 114.  The mortgage and insurance fraud counts share two of the four defendants remaining in the case – DeVito and Didonato – as well as a third defendant, Daniel Forbes, who was charged in an underlying indictment.  As discussed above, both sets of charges also involve the same distinct group of residential properties controlled by DeVito. In order to execute both the mortgage and insurance frauds, DeVito, DiDonato and their co-conspirators used certain individuals as nominal owners of the various properties to submit applications and claims on their behalf.  Common participants included, among others, John DeBello, Joseph LaManna and Sherri DeVito, who is DeVito's wife.  In addition, DeVito used entities such as PREG and Encantada Realty to carry out the various frauds charged in the Indictment.  Finally, much of the same proof will

be offered for the insurance and mortgage fraud charges,
including testimony from the same cooperating witness, testimony
from the original developer of 28 Brae Burn, various bank records
and other financial documents concerning the distribution of
proceeds, and evidence explaining the relationships between
DeVito and DiDonato and the various properties.[2]  Thus, the
insurance fraud counts are properly joined with the other counts
in the Indictment.

          The defendants' request for severance pursuant to Rule
14 is similarly meritless.  Neither Cordasco, Liscio, nor DeVito
can satisfy the "'extremely difficult burden,'" Casamento, 887
F.2d at 1149, of showing that he would be so prejudiced by a
joint trial that he would be denied a constitutionally fair
trial.  See United States v. Rosa, 11 F.3d 315, 341 (2d Cir.
1993).

          Cordasco and Liscio primarily argue that because they
are not charged in the mortgage-fraud related counts of the
Indictment, they will be substantially prejudiced at a trial
where evidence of bank fraud and obstruction of justice will be
admitted against their co-defendants.  However, any concern that
the jury will not be able to segregate the evidence between the

---

[2]          In addition, DeBello and LaManna remain potential
witnesses for both the mortgage fraud and insurance fraud
charges.  Even if the Government chooses not to call either of
them in its case-in-chief, they could be witnesses for the
defense or in rebuttal.  Contrary to DeVito's assertion, (DeVito
Mem. at 20), both are available to testify at trial.

defendants charged with participating in both mortgage and insurance fraud, from the defendants charged only with insurance fraud is unfounded.  The Second Circuit has repeatedly recognized that "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance."  United States v. Carson, 702 F.2d at 367; see also United States v. Losada, 674 F.2d 167, 171 (2d Cir. 1982). Moreover, any conceivable spillover prejudice that may occur can and will be corrected by the Court's instruction that the jury consider the guilt of each defendant individually – an instruction that jurors are presumed to be able to follow. United States v. Potamitis, 739 F.2d 784, 790 (2d Cir. 1984); see also United States v. Lasanta, 978 F.2d at 1307 ("[t]he district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant"); United States v. Zackson, 6 F.3d at 922.

Moreover, the evidence against Liscio and Cordasco is relatively straightforward.  Liscio was an insurance broker who sold insurance policies to cover various homes under the control of DeVito, and he assisted in filing an inflated insurance claim. Cordasco provided emergency clean-up services for flood damage and submitted information in support of inflated claims for water damage to personal property.  Liscio and Cordasco also planned to break a pipe at one of the homes in order to file additional

16

fraudulent insurance claims. There will be no evidence suggesting that they were involved in the purchasing or financing of any of the homes. Thus, the evidence against Liscio and Cordasco is "simple and straightforward for the jury to consider without any significant spillover effect." Losada, 674 F.2d at 171. An appropriate limiting instruction will cure any risk of prejudice. See id.; see also United States v. Boykins, 9 F.3d 1278, 1289-90 (7th Cir. 1993) (affirming denial of severance where defendant claimed prejudice arising from "spillover" effect of guns and drugs possessed by co-defendants in the same vehicle).

In sum, the interests of efficiency and judicial economy weigh strongly in favor of a joint trial in this case. Zafiro, 506 U.S. at 537. Holding a separate trial for the insurance fraud charges would result in the needless repetition of testimony and argument. Given the absence of any identifiable prejudice that Cordasco or Liscio face at a joint trial, their motion for severance of Counts Fourteen and Fifteen should be denied.

**II.     DeVito's Motion For A Severance Based On Alleged Prejudice Arising From Incriminating Statements Made By Co-Defendants Should Be Denied**

DeVito erroneously relies on Bruton v. United States, 391 U.S. 123 (1968), as a basis for severing his trial from that of his co-defendants, Liscio, Cordasco, and DiDonato. DeVito anticipates that the Government will seek to offer at trial

17

various consensual recordings of conversations that a confidential informant had with Liscio, Cordasco and others. DeVito argues that the statements made in those recordings cannot be admitted against him, and therefore their introduction at a joint trial would violate his rights under the Confrontation Clause.

DeVito's argument fails for several reasons. First, substantial portions of the recordings consist of admissions by co-defendants that do not, on their face, implicate DeVito in any crime and can be offered against his co-defendants at a joint trial with an appropriate limiting instruction. Second, other statements on the recordings are admissible against DeVito pursuant to Federal Rule of Evidence 804(b) as statements against interest. Third, the Government will redact the recordings so as to excise any non-relevant portions, including certain references to DeVito and his family engaging in organized crime, gambling, and other "sordid activities," to which DeVito objects. (DeVito Mem. at 7). Accordingly, DeVito's motion on this point should be denied.

A.    The Consensual Recordings

From approximately November 2004 through February 2005, John DeBello, working at the direction and under the supervision of the FBI, made numerous consensual recordings of telephone conversations and meetings with Liscio and Cordasco. The Government presently intends to offer redacted portions of, at

most, five of these recordings at trial: (1) a November 10, 2004 meeting between DeBello and Liscio at Liscio's office; (2) a January 29, 2005 meeting between DeBello and Liscio at Liscio's office; (3) a February 2, 2005 meeting with DeBello, Liscio and Cordasco at 4350 Purchase; (4) a February 8, 2005 meeting with DeBello, Liscio and Robin Midollo at 4350 Purchase; and (5) a February 16, 2005 meeting with DeBello, Liscio and Cordasco at Liscio's office.  Draft transcripts of these recordings are attached for the Court's review.

         The bulk of the conversation contained on these recordings concerns a plan by Liscio and Cordasco, with the assistance of Robin Midollo, to break a water pipe at 4350 Purchase in order to submit fraudulent insurance claims for water damage.  Three of the recordings directly relate to overt acts identified in the Indictment in furtherance of the defendants' conspiracy to commit insurance fraud – specifically the January 29, 2005 meeting in which Liscio described how he and Cordasco intended to break a pipe at 4350 Purchase for the purpose of fraudulently obtaining insurance proceeds, (Ind't ¶ 39 (g)); the February 2, 2005, meeting at 4350 Purchase in which Liscio and Cordasco discussed how to cause water damage to the house, (Ind't ¶ 39 (h)); and the February 8, 2005 meeting at 4350 Purchase in which Cordasco brought Midollo to the house for the purpose of identifying which pipe to break, (Ind't ¶ 39 (i)).

         Liscio and Cordasco's plan to intentionally flood 4350

19

Purchase in order to submit insurance claims for water damage to the home and its contents was one part of the defendants' broader conspiracy to commit insurance fraud as charged in the Indictment. As explained above, DeVito, DiDonato, Liscio and Cordasco previously submitted false insurance claims for water damage caused by a broken pipe at 28 Brae Burn. (Ind't ¶ 33). Another broken water pipe also flooded 28 Scott Circle in January 2004. Liscio filed insurance claims in connection with that flood, and Cordasco performed some of the clean-up work, for which he was reimbursed by the insurance company. Liscio and Cordasco, thus, planned to continue the conspiracy by intentionally flooding 4350 and submitting fraudulent insurance claims on yet another home.

During the recorded conversations, Liscio and Cordasco, at times, also refer to the defendants' submission of fraudulent insurance claims in connection with the flood at 28 Brae Burn. Their inculpatory statements include references to DeVito's involvement in the insurance fraud scheme at that time. For example, Liscio repeats several times that he expected DeVito to pay him approximately $50,000 for helping DeVito submit fraudulent insurance claims on 28 Brae Burn:

> It was no skin off my nose. Because I looked at the whole picture . . . John [DeBello] owned the house. Dom's [DeVito] got the contents. I'm gonna put the claim through (UI) okay? He [DeVito] was gonna take care of me. You know? I had no fucking problem with that.

(11/10/04 Tr. at 34).   Similarly, Cordasco explains that he

helped DeVito submit fraudulently inflated claims for the

contents of 28 Brae Burn:

> The content stuff that he [DeVito] had bought right off
> the Internet.  I got the guy to appraise it at like
> over hundred thousand dollars.  They were worth like
> fucking five thousand dollars.  They were shit.

(2/8/05 Tr. at 24).

### A.    Applicable Law

### 1.    Bruton Does Not Apply to Statements That Are Not Facially Incriminatory of the Defendant

In <u>Bruton</u> v. <u>United States</u>, 391 U.S. 123 (1968), the

Supreme Court held that a defendant is deprived of his rights

under the Confrontation Clause when a co-defendant's statement

naming him as a participant in the crime is admitted at their

joint trial, notwithstanding a jury instruction that the

statement can only be considered against the defendant who made

it.   However, the rule delineated in <u>Bruton</u> has since been

circumscribed by the Supreme Court.   In <u>Richardson</u> v. <u>Marsh</u>, 481

U.S. 200, 208-09 (1987), the Supreme Court explicitly rejected a

"contextual" approach to evaluating a post-arrest statement, and

focused instead on whether the co-defendant's statement alone was

"facially incriminating" as to the defendant.

The Second Circuit has repeatedly emphasized the narrow

scope of <u>Bruton</u>, stressing that "[t]he violation occurs only when

the statement is 'clearly inculpatory' of the defendant and

'vitally important' to the prosecution."   <u>United States</u> v. <u>Marin</u>,

21

669 F.2d 73, 83 (2d Cir. 1982) (quoting United States v. Knuckles, 581 F.2d 305, 313 (2d Cir. 1978)); accord United States v. Sacco, 563 F.2d 552, 556 (2d Cir. 1977); United States v. Wingate, 520 F.2d 309, 313 (2d Cir. 1975). Thus, a limiting instruction will be sufficient in the absence of highly incriminating hearsay that is important to the Government's case. See United States v. Rubio, 709 F.2d 146, 154-55 (2d Cir. 1983) (limiting instruction sufficient where post-arrest statement naming the defendant did not directly inculpate him in the crime and referred principally to facts to which another witness testified; noting that "[t]he Supreme Court in Bruton has indicated that such a careful foundation and curative instruction, although ineffective against 'powerfully incriminating' statements, may be effective in less severe circumstances").

Indeed, it is well settled that a co-defendant's statement violates the Sixth Amendment "only if the statement, standing alone, would clearly inculpate [the defendant] without introduction of further independent evidence." United States v. Wilkinson, 754 F.2d 1427, 1435 (2d Cir. 1985) (citations omitted); accord United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989); see also United States v. Walker, 148 F.3d 518, 522 (5th Cir. 1998) ("Bruton only applies to out-of-court statements that are 'facially incriminating'") (citations omitted). Where the jury can only link the defendant to a crime by relying on

22

other evidence in the trial, <u>Bruton</u> does not apply.  <u>See, e.g.</u>,
<u>United States</u> v. <u>Wilkinson</u>, 754 F.2d at 1435 (where co-
conspirator's redacted post-arrest statement stated she began
working at defendant's restaurant and that for a three-to-four-
month period during her employment she sold $200 worth of
cocaine, defendant's <u>Bruton</u> rights were not violated because the
statement, without additional evidence, did not connect defendant
to the crime); <u>United States</u> v. <u>Slocum</u>, 695 F.2d 650, 655-56 (2d
Cir. 1982) (no <u>Bruton</u> violation where nontestifying co-
defendant's statement implicated a company and the evidence
showed the defendant controlled the company's activities); <u>United</u>
<u>States</u> v. <u>Walker</u>, 148 F.3d at 522-23 (reference to the defendant
as the co-conspirator's "home boy" not sufficiently direct to
trigger a <u>Bruton</u> violation).

### 2.   <u>A Co-Defendant's Statements Against Interest Are</u> <u>Admissible Against A Defendant</u>

Federal Rule of Evidence 804(b), which sets forth
exceptions to the hearsay rule, provides that statements "are not
excluded by the hearsay rule if the declarant is unavailable as a
witness," and if the statement:

> at the time of its making . . . so far tended to
> subject the declarant to civil or criminal liability .
> . . that a reasonable person in the declarant's
> position would not have made the statement unless
> believing it to be true.

Federal Rule of Evidence 804(b)(3).

In <u>Williamson</u> v. <u>United States</u>, 512 U.S. 594, 600-01

23

(1994), the Supreme Court held that the declarations of a criminal that implicate another person are admissible to the extent that they are self-inculpatory. 512 U.S. at 599. The Court specifically noted that the mere fact that another person is mentioned in the declarant's statement does not prevent the statement from being self-inculpatory:

> "Sam and I went to Joe's house" might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the defendant in Joe and Sam's conspiracy.

Accordingly, in United States v. Matthews, 20 F.3d 538 (2d Cir. 1994), the Second Circuit held that statements by Matthews to his girlfriend concerning the criminal activities of himself and his co-conspirators could be admitted against the co-conspirators at trial through testimony from the girlfriend under Fed. R. Evid. 804(b)(3). The Second Circuit explained that:

> [I]f the [out-of-court statement] is made to a person whom the declarant believes is an ally rather than a law enforcement official, and if the circumstances surrounding the portion of the statement that inculpates the [trial] defendant provide no reason no suspect that that inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant, the trustworthiness of the portion that inculpates the [trial] defendant may well be sufficiently established that its admission does not violate the Confrontation Clause.

20 F.3d at 546. See also United States v. Sasso, 59 F.3d 341, 348 (2d Cir. 1995) (no Confrontation Clause violation where nontestifying co-defendant's out-of-court statements inculpating

defendant and himself did not attempt to shift blame and were made in private and not to curry favor with authorities); United States v. Bakhtiar, 994 F.2d 970, 978 (2d Cir. 1993); United States v. Rahme, 813 F.2d 31, 36 (2d Cir. 1987) (trustworthiness indicated in part by fact that even portion that inculpated defendant was against the declarant's penal interest); United States v. Katsougrakis, 715 F.2d at 776 (trustworthiness shown by lack of any "persuasive showing that [the declarant] had an ulterior motive when conversing with his friend").

Several Courts of Appeal have held that statements by person A to person B, whom A believes to be an ally, that are incriminatory of person A and person C are admissible under Rule 804(b)(3). See e.g., United States v. Westmoreland, 240 F.3d 618, 627 (7th Cir. 2001) (declarant's self-inculpatory statements to his son that also referred to defendant's crimes met Lilly's requirement that "particularized guarantees of trustworthiness" be present); United States v. Boone, 229 F.3d 1231, 1233 (9th Cir. 2000) (taped conversation between Williams and his girlfriend in which Williams implicated himself and Boone in armed robbery was admissible against Boone at trial); United States v. Tocco, 200 F.3d 401, 416 (6th Cir. 2000) (declarant's conversation with his son concerning declarant's own criminal activities and those of the defendant admissible under 804(b)(3) as particularly trustworthy). Precisely the same situation is present here.

25

The Second Circuit has reached similar holdings in
United States v. Lieberman, 637 F.2d 95, 103 (2d Cir. 1980),
United States v. Stratton, 779 F.2d 820, 828-29 (2d Cir. 1985)
and United States v. Kusek, 844 F.2d 942, 950-51 (2d Cir. 1988).
The evidence in those cases included surreptitious audio and
video tape-recordings made by a cooperating witness of unarrested
co-conspirator "A", in which "A" made statements inculpating
himself and co-conspirator "B."  In each case, the Second Circuit
held that the recordings were admissible at "B's" trial as
statements against "A's" penal interest.  In each case, the
Second Circuit noted that "A's" statements against interest were
particularly reliable because "A" "believed [he was] talking to
co-conspirators rather than the authorities . . . [and] therefore
had no reason to lie."  Stratton, 779 F.2d at 829.  See also
United States v. Badalamenti, 626 F. Supp. 658, 660 (S.D.N.Y.
1986).

### B.  Discussion

In this case, the Government will substantially redact
the five consensually-recorded conversations that it will offer
at trial.  The unredacted recordings are rather lengthy, and
contain a fair amount of idle chit-chat, gossip, and irrelevant
banter.  The Government will seek to admit only those portions of
the recorded conversations in which either Liscio or Cordasco
discuss their plans to flood 4350 Purchase, or the events
surrounding floods at previous houses in which they were

26

personally involved.  In light of these redactions, DeVito's
motion for severance is meritless.

As an initial matter, DeVito's request for severance
from DiDonato lacks any basis in law or fact.  The Government
does not intend to offer any recordings containing statements
made by DiDonato.  Therefore, DeVito's motion for severance from
DiDonato should be summarily denied.

Second, to the extent that the redacted recordings will
contain statements by Liscio and Cordasco about their plan to
flood 4350 Purchase and submit fraudulent insurance claims, those
statements do not require severance.  As DeVito repeatedly notes,
"none of these discussions mention DeVito at all."  (DeVito Mem.
at 7 (discussing Nov. 10, 2004 recording); see also id. at 8-9
(discussing Jan. 29, 2005 recording); id. at 10 (discussing Feb.
2, 2005 recording); and id. at 11 (discussing Feb. 8, 2005
recording).  There is nothing in these portions of the recordings
that could be construed as facially incriminating to DeVito nor
that – standing alone – connects DeVito to the respective
statements.  Should the Court admit these statements into
evidence, the Government consents to a proper limiting
instruction and will submit a proposed limiting instruction along
with its other proposed jury instructions.

Third, to the extent that portions of the redacted
recordings will contain statements by Liscio or Cordasco
concerning DeVito's submission of fraudulent insurance claims for

27

28 Brae Burn, those statements are admissible against DeVito under Fed. R. Evid. 804(b)(3) because, when made, they were against his co-defendants' penal interest, and they contain particular guarantees of trustworthiness.  These statements by Liscio and Cordasco are clearly self-inculpatory because they concern such things as how much they expected to get paid by DeVito for committing the fraud, and how they assisted DeVito in submitting inflated claims for damage to personal property.  More generally, Liscio's and Cordasco's statements about 28 Brae Burn demonstrate their respective knowledge of the falsity of the information that DeVito and other co-conspirators were submitting to the insurance company.  See e.g., United States v. York, 933 F.2d 1343, 1360 (7th Cir. 1991) ("statements that demonstrate a declarant's inside knowledge of a crime are . . . against the defendant's penal interest"), overruled on other grounds, 182 F.3d 562 (7th Cir. 1999).  Furthermore, Liscio's and Cordasco's statements contain particular guarantees of trustworthiness because they were made in private to a person who they believed was a co-conspirator, and were not part of an attempt to minimize their criminal conduct or shift blame to DeVito or anyone else. See Sasso, 59 F.3d at 348; Matthews, 20 F.3d at 546.

        Finally, Crawford v. Washington, 541 U.S. 36 (2004), is completely inapposite to this case.  DeVito contends that DeBello's statements on the recordings are "testimonial" statements that violate his Confrontation Clause rights.

28

However, DeBello's questions and statements will not be offered for their truth, but rather merely to provide context to the recorded statements of Liscio and Cordasco.  Accordingly, they are not "testimonial," and <u>Crawford</u> does not apply.

**III.    The Court Should Deny DeVito's Motion To Sever the Obstruction Count But Allow A Bifurcated Trial**

DeVito also moves to sever Count Thirteen, which charges him with obstruction of justice, based on Rules 8 and 14(a) of the Federal Rules of Criminal Procedure.  Specifically, DeVito contends that this Count is misjoined with the other counts in the Indictment and that a joint trial would be unfairly prejudicial because it will "unnecessarily reveal to the jury [his] prior conviction for bank fraud."  (DeVito Mem. at 24).

DeVito's severance motion should be denied.  Count Thirteen is properly joined with the other counts because they all arise out of a common scheme or plan.  As explained in greater detail in the Government's Memorandum of Law in Opposition to the Defendants' Pre-Trial Motions, Count Thirteen is based upon DeVito falsely reporting to the Court and to the Department of Probation that he earned no income from the sale of 3747 Purchase Street.  In fact, the evidence will show that DeVito sold 3747 Purchase Street to a woman named Nancy Armano for approximately $960,000, and, on the very same day as the DeVito-Armano "sale," 3747 Purchase Street was sold from Armano to an individual named Albert Tarantino for $1,700,000.  Nearly

$700,000 in proceeds from the Armano-Tarantino sale of 3747 Purchase Street was deposited into the PREG bank account controlled by DeVito. Thus, in order to commit the obstruction, DeVito utilized one of the very same "flips" that he and DiDonato used in the real estate investment fraud charged in Counts 1 through 12. Moreover, in order to prove the obstruction count, the Government will offer much of the same proof as for the other charges, including testimony from the same cooperating witness, various bank records and other financial documents concerning the distribution of proceeds, and evidence explaining the relationships between DeVito and the various properties.

However, as DeVito notes, the Government will also seek to offer evidence concerning his prior sentencing proceeding in order to prove that he obstructed justice in that case. The Second Circuit has "held that joinder of an ex-felon count with other charges requires either severance, bifurcation, or some other effective ameliorative procedure." United States v. Jones, 16 F.3d 487 (2d Cir. 1994). In such circumstances, a jury instruction is generally insufficient to mitigate the prejudice caused by the evidence of a prior conviction. Id. at 493. Nevertheless, where evidence of a defendant's prior felony conviction would otherwise be admissible to prove other counts in the Indictment, severance may not be required because "the jury would have been exposed to that evidence [in any case]." United States v. Lang, 220 Fed. Appx. 48 (2d Cir. 2007).

In this case, the Government expects that evidence of DeVito's prior mortgage fraud will be admitted as background to the real estate investment fraud conspiracy charged in Counts 1 through 12, to explain the relationship of trust and confidence between DeVito and the cooperating witness, and to prove DeVito's knowledge, intent and opportunity to commit bank fraud, among other things. Nevertheless, to ameliorate any prejudice that may be suffered by DeVito, the Government consents to a limited bifurcation of the trial. The Government proposes that it be allowed to offer evidence concerning the real estate and financial transactions for 3747 Purchase Street during the initial portion of the trial, but the introduction of evidence related to DeVito's sentencing proceedings, including submissions to Probation and the Court, will be delayed until the bifurcated portion of the trial. The interests of efficiency and judicial economy support such a bifurcated proceeding, as opposed to a complete severance of Count 13.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendants' motions for severance, but provide for a limited bifurcation of trial on Count Thirteen.

Dated:    July 7, 2008
          New York, New York

                        Respectfully submitted,

                        MICHAEL J. GARCIA
                        United States Attorney

                  By:  /s/ Katherine Goldstein
                       KATHERINE R. GOLDSTEIN
                       JONATHAN B. NEW
                       Assistant United States Attorney
                       Tel. No.: (212) 637-2641/1049

## **AFFIRMATION OF SERVICE**

KATHERINE R. GOLDSTEIN, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

That, on July 7, 2008, I caused one copy of the within Government's Memorandum of Law in Opposition to Defendants' Severance Motions to be delivered by Federal Express to:

> George L. Santangelo, Esq.
> 111 Broadway, Suite 1706
> New York, NY 10006
>
> Angelo G. MacDonald, Esq.
> Pappalardo & Pappalardo, LLP
> 700 White Plains Road, Suite 355
> Scarsdale, NY 10583
>
> Lawrence DiGiansante, Esq.
> 984 Morris Park Avenue
> Bronx, NY 10462
>
> Lawrence S. Goldman, Esq.
> 500 5th Avenue, 29th Floor
> New York, NY 10110

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   New York, New York
July 7, 2008

/s/ Katherine Goldstein
KATHERINE R. GOLDSTEIN

34